# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

TYISHA D. STUBBS o/b/o :
T.N.S., a minor, :
 :
    Plaintiff : No. 3:12-CV-00905
 :
v. : (Judge Nealon)
 :
CAROLYN W. COLVIN, :
ACTING COMMISSIONER OF SOCIAL :
SECURITY, :
 :
    Defendant :

## MEMORANDUM

### Background

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, T.N.S., is seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied her claim for child's supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (Act), 42 U.S.C. §§ 1381-1383f. To be entitled to child SSI benefits, the applicant must establish that she was disabled prior to turning 18 years of age as the result of a physical or mental impairment, that the impairment resulted in marked and severe functional limitations, and that the impairment was expected to result in death or had lasted or was expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

Plaintiff protectively filed an application for child SSI on January 22, 2010, alleging disability since November 8, 2007, due to asthma. (Tr. 105, 120). Plaintiff was born on

November 8, 2007, and was considered a newborn/ young infant[1] on the application date and an older infant[2] at the time of the administrative law judge's ("ALJ") decision. 20 C.F.R. §§ 416.926a(g)(2)(i), 416.926a(g)(2)(ii); (Tr. 68).

Plaintiff's claim for child SSI was initially denied by the Social Security Administration on May 21, 2010. (Tr. 61). Plaintiff requested a hearing before an administrative law judge. (Tr. ). A hearing was held before administrative law judge Sridhar Boini on August 12, 2011. (Tr. 33-48). On October 6, 2011, the administrative law judge issued a decision denying Plaintiff's claim for child SSI benefits. (Tr. 62-80). On October 20, 2011, Plaintiff filed a request for review of the decision with the Appeals Council. (Tr. 7-10). On April 25, 2012, the Appeals Council concluded that there was no basis upon which to grant Plaintiff's request for review. (Tr. 1-3). Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On May 15, 2012, Plaintiff filed a complaint in this Court. (Doc. 1). The Commissioner filed an answer to the complaint and a copy of the administrative record on July 17, 2012. (Docs. 7, 8). Plaintiff filed her brief on August 30, 2012 and the Commissioner filed its brief on September 20, 2012. (Docs. 9, 10). The matter is ripe for disposition.

**Standard of Review**

When considering a social security appeal, the Court has plenary review of all legal issues

---

[1] The Social Security regulations state that a person from birth to attainment of age 1 is classified as a newborn/ young infant. 20 C.F.R. § 416.926a(g)(2)(i).

[2] The Social Security regulations state that a person from age 1 to attainment of age 3 is classified as an older infant/ toddler. 20 C.F.R. § 416.926a(g)(2)(ii).

2

decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the Court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence.").

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime

3

Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-07. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

A three-step evaluation process is used to determine if a child claimant is disabled. 20 C.F.R. § 416.924. The first step of the process requires the claimant to establish that she has not engaged in substantial gainful activity. If a claimant has been doing substantial gainful activity, the Commissioner will determine that she is not disabled and will not review the claim further. If the claimant is not doing substantial gainful activity, the Commissioner will determine, at step two, if the claimant has a physical or mental impairment(s) or combination of impairments that is severe. If the impairment(s) is not severe, the Commissioner will determine that the claimant is not disabled and will not review the claim further. If the impairment(s) is severe, the Commissioner will then proceed to step three and determine if the claimant has an impairment(s)

4

that meets, medically equals, or functionally equals the listings. To "functionally equal" a listing, the impairment(s) must be "of listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). There are six domains of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A "marked" limitation exists when the impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities in the domain in an age-appropriate manner. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi), 416.926a(e)(2). An "extreme" limitation exists when the impairment interferes very seriously with domain activities. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi), 416.926a(e)(3). If the Commissioner finds that the claimant has such an impairment(s), and it meets the duration requirement, the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.924(a).

In the present case, the ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 65-80). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 22, 2010, the application date. (Tr. 68). At step two, the ALJ found that Plaintiff's asthma, history of prematurity and history of pneumonia were severe impairments. (Tr. 68). At step three, the ALJ determined that Plaintiff's impairments did not meet, medically equal, or functionally equal the criteria of any listed impairment in Appendix 1, Subpart P. (Tr. 68-79). Specifically, he found that Plaintiff has no limitation in acquiring and using information, no limitation in attending and completing tasks, no limitation in interacting and relating to others, no

limitation in moving about and manipulating objects, no limitation in caring for herself, and less than marked limitation in health and physical well-being. (Tr. 74-79). Thus, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 79-80).

**Medical Evidence**

Plaintiff was born nine weeks premature on November 8, 2007. (Tr. 179-82). When Plaintiff was born, she was transferred to the Neonatal Intensive Care Unit. (Tr. 180). She had mild respiratory distress and was started on a continuous positive airway pressure machine ("CPAP"). (Tr. 180). She was weaned off the CPAP machine and did not require any more respiratory care during the remainder of this hospitalization. (Tr. 180). Plaintiff was discharged home in good condition. (Tr. 182).

Plaintiff was treated by doctors at Pocono Medical Center and was regularly prescribed Orapred,[3] Albuterol,[4] a Flovent inhaler,[5] and Pulmicort[6].

---

[3] Orapred is a corticosteroid that prevents the release of substances in the body that cause inflammation and is used to treat asthma. See http://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=0faffa4d-c948-4482-a432-85402d466a77#nlm34089-3 (Last accessed December 10, 2013).

[4] "Albuterol is used to prevent and treat wheezing, shortness of breath, coughing, and chest tightness caused by lung diseases such as asthma and chronic obstructive pulmonary disease (COPD; a group of diseases that affect the lungs and airways). Albuterol inhalation aerosol is also used to prevent breathing difficulties during exercise. Albuterol is in a class of medications called bronchodilators. It works by relaxing and opening air passages to the lungs to make breathing easier." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682145.html (Last accessed December 10, 2013).

[5] "Fluticasone oral inhalation is used to prevent difficulty breathing, chest tightness, wheezing, and coughing caused by asthma. Fluticasone is in a class of medications called corticosteroids. It works by decreasing swelling and irritation in the airways to allow for easier breathing." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601056.html (Last accessed December 10,

In April 2008, Moiz Mohyuddin, M.D., a disability claims adjudicator, noted that Plaintiff appeared and tested normal for a four (4) month old. (Tr. 227). Dr. Mohyuddin also determined that Plaintiff was age appropriate in interacting and relating with others, and that the other domains of functioning were not applicable. (Tr. 230).

Plaintiff was treated at the emergency room on October 7, 2008 after she fell off a couch and injured her head. (Tr. 276, 336-39).

At a routine child examination in November 2008, Mary Jane Torres, M.D., noted that Plaintiff was wheezing and she prescribed Albuterol. (Tr. 304-05).

On December 9, 2008, Plaintiff was treated by Dr. Torres for wheezing, coughing, and a runny nose. (Tr. 302-03, 401-02). Dr. Torres noted that Plaintiff had an acute upper respiratory infection and recommended that she use nasal saline drops. (Tr. 302, 402)

Plaintiff had a routine examination with Dr. Torres in February 2009. (Tr. 297-98). Dr. Torres noted that Plaintiff's lungs were clear, there were no wheezes or crackles, and she was ordered to continue Albuterol. (Tr. 297-98).

Plaintiff was admitted to the hospital on March 14, 2009 and discharged on March 17, 2009, due to pneumonia. (Tr. 265-75, 325-30). On March 19, 2009, Plaintiff was seen by Garry Hamilton, M.D., to recheck her pneumonia. (Tr. 295-96, 410). Dr. Hamilton noted that she was doing better, she was still coughing but had no wheezing or distress. (Tr. 295, 410).

---

2013).

[6] "Budesonide is used to prevent wheezing, shortness of breath, and troubled breathing caused by severe asthma and other lung diseases. It belongs to a class of drugs called corticosteroids." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699056.html (Last accessed December 10, 2013).

On April 18, 2009, Plaintiff went to the emergency room and received a nebulizer treatment. (Tr. 259-65, 341-47). Plaintiff was wheezing and rhonchi were present. (Tr. 344).

On October 3, 2009, Plaintiff went to the emergency room and was treated for asthmatic bronchitis. (Tr. 255-59, 350-53).

On November 24, 2009, Plaintiff was treated in the emergency room for pneumonia and bronchospasm. (Tr. 250-55, 356-61).

In January 2010, Plaintiff went to the emergency room and it was noted that she was coughing and wheezing. (Tr. 247-48, 362-65).

On April 13, 2010, Plaintiff was treated by Dr. Torres for wheezing. (Tr. 69, 291-92, 414-15). Dr. Torres noted that Plaintiff had asthma with acute exacerbation. (Tr. 291, 415). She prescribed Albuterol, prednisolone syrup and Pulmicort. (Tr. 291, 415). Dr. Torres treated Plaintiff for an upper respiratory infection on April 26, 2010. (Tr. 416-17).

On May 20, 2010, Plaintiff was treated in the emergency room for a fever, coughing, wheezing, and shortness of breath. (Tr. 368-71).

Leo Potera, M.D., a Disability Determination Services medical consultant, completed a Childhood Disability Evaluation Form on May 21, 2010 and determined that Plaintiff had severe impairments, but they did not meet, medically equal, or functionally equal the listings. (Tr. 319-24).

Plaintiff went to the emergency room in June 2010 for a cough and was treated with bronchodilators. (Tr. 69, 373-78, 421-22). In June 2010, Robert W. Miller, M.D., noted that Plaintiff had mild wheezing and he established an asthma medication regimen. (Tr. 426-27). Dr. Miller prescribed Orapred, inhaled Albuterol, and inhaled Flovent. (Tr. 427). In July 2010,

8

Plaintiff's mother reported to Dr. Miller that Plaintiff's respiratory status improved. (Tr. 69, 428). Dr. Miller ordered that Plaintiff be weaned off the Orapred, and continue to use Flovent and Albuterol. (Tr. 428).

In October 2010, Plaintiff had wheezes with an acute upper respiratory infection. (Tr. 500). Plaintiff was treated for pneumonia in November 2010. (Tr. 380-85).

Plaintiff began treating with Mohammad S. Hossain, M.D., in 2010. (Tr. 440). On October 2, 2010, Dr. Hossain diagnosed an acute upper respiratory infection, and advised that she use Albuterol and use a humidifier at home. (Tr. 441). On October 14, 2010, Dr. Hossain diagnosed an acute upper respiratory infection with some asthma exacerbation. (Tr. 447). He ordered that Plaintiff use Pulmicort, Orapred, and Albuterol. (Tr. 447).

In January 2011, Dr. Hossain again diagnosed an acute upper respiratory infection and asthma exacerbation. (Tr. 454). Plaintiff's mother reported that she ran out of her daughter's Albuterol. (Tr. 506). Dr. Hossain ordered continued use of Albuterol, Pulmicort, and Orapred. (Tr. 454).

In March 2011, Plaintiff was treated by Akiko Kawamura, M.D., for a cough and runny nose. (Tr. 459). Dr. Kawamura noted that Plaintiff suffered from bronchitis. (Tr. 459-63).

In April 2011, Plaintiff was treated for allergic rhinitis and nasal congestion. (Tr. 466-71). Upon examination, her lungs were clear and she was prescribed Claritin. (Tr. 466-71).

In May 2011, Plaintiff was treated for coughing and nasal congestion and was prescribed Singulair. (Tr. 486-87, 539).

Plaintiff was treated for coughing and wheezing in June 2011. (Tr. 546-48). Plaintiff's mother reported that she ran out of Pulmicort. (Tr. 546). She was directed to continue Albuterol,

Flovent, Pulmicort and Orapred. (Tr. 548).

## Discussion

Plaintiff argues that the ALJ erred in finding that she did not meet Listings 103.03B and 103.03C. (Doc. 9, pg. 4). The Commissioner argues that Plaintiff's impairments do not meet Listings 103.03B and 103.03C. (Doc. 10, pg. 8).

To meet the requirements of Listing 103.03B, a minor child must suffer from asthma with:

> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 103.03B.

Attacks are defined as:

> [P]rolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 3.00C.

The ALJ stated that Plaintiff was not on a maintenance asthma therapy regimen until June 2010 and, since then, has not had the requisite exacerbations/ treatments to meet listing level severity. (Tr. 69, 73). Plaintiff argues that she has had multiple asthma attacks and visits to the

10

hospital, emergency room and doctor's office. (Doc. 9, pgs.6-8).

The Commissioner argues that Plaintiff has not presented evidence establishing that she suffers from asthmatic attacks, despite prescribed treatment that in addition to requiring physician intervention, occur at least once every two months or at least six times a year. (Doc. 10, pg. 10). The Commissioner states that Plaintiff's visits to Dr. Hossain on October 2, 2010 and October 14, 2010, do not constitute asthma attacks because she did not require intensive treatment on those occasions. (Doc. 10, pg. 9) (Tr. 441, 447). The Commissioner also argues that Plaintiff's visits to Dr. Kawmura on January 27, 2011 and March 15, 2011, do not constitute asthma attacks because she did not require intensive treatment on those occasions. (Doc. 10, pg. 9) (Tr. 453-58, 460-63). Similarly, Plaintiff's pediatrician visits on April 19, April 20, and May 20, 2011, do not constitute asthma attacks. (Doc. 10, pgs. 9-10).

The evidence of record reveals that Plaintiff has had many hospital and doctor visits. However, the number of the asthma-necessitated visits demonstrate that Plaintiff did not experience the required number of "attacks" to qualify for disability benefits under Listing 103.03B. Many of Plaintiff's visits did not require intensive treatment. Further, Plaintiff has not presented evidence "documenting adherence to a prescribed regimen of treatment." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 3.00C. Rather, many of the treatment notes reveal that Plaintiff's mother did not follow the prescribed treatment and ran out of medications. (Tr. 506-07, 546-48). Substantial evidence supports the ALJ's determination that Plaintiff did not meet the requirements of Listing 103.03B.

This Court also finds that substantial evidence supports the ALJ's determination pursuant to Listing 103.03C. Listing 103.03C provides that a minor suffers from asthma with:

> C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:
>
> 1. Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or
>
> 2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 103.03C.

Plaintiff notes that she required treatment on several occasions, she had many complaints of wheezing and she uses Albuterol Sulfate, Orapred, Claritin, Flovent inhaler and Pulmicort. (Doc. 9, pg. 7). She argues that she has had persistent low-grade wheezing between acute attacks and there are no extended symptom-free periods. (Doc. 9, pg. 8). Plaintiff also states that the ALJ erred in characterizing her wheezing as minimal or mild and not persistent. (Doc. 9, pg. 8).

Plaintiff has used the steroid Orapred and also uses bronchodilators or their equivalent. (Doc. 9, pg. 8). In June 2010, Dr. Miller prescribed Orapred and Albuterol on an as-needed basis. (Tr. 426-28). In July 2010, Dr. Miller ordered that Plaintiff try to wean off Orapred and use Flovent and Albuterol two puffs each twice per day. (Tr. 428).

In October 2010, Dr. Hossain ordered that Plaintiff use Orapred, one teaspoon daily for five (5) days. (Tr. 447). He also ordered Pulmicort in a nebulizer daily, Albuterol sulfate in a nebulizer every four (4) hours as needed for shortness of breath, and Flovent two (2) puffs twice a day. (Tr. 447-49).

In January 2011, Dr. Hossain again ordered that Plaintiff use Orapred, one teaspoon daily for five (5) days. (Tr. 453-57). He also ordered Pulmicort in a nebulizer daily, Albuterol sulfate in a nebulizer every four (4) hours as needed for shortness of breath, and Flovent two (2) puffs

12

twice a day. (Tr. 447-49).

In March 2011, Dr. Kawamura ordered Albuterol sulfate every four (4) hours as needed for shortness of breath and Flovent two (2) puffs twice a day. (Tr. 460).

In April 2011, Dr. Kawamura ordered Orapred, one teaspoon daily for five (5) days. (Tr. 472-74). He also ordered Albuterol sulfate in a nebulizer every four (4) hours as needed for shortness of breath. (Tr. 472-74).

On April 28, 2011, Plaintiff was directed to use Albuterol sulfate in a nebulizer every four (4) hours as needed for shortness of breath, Flovent two (2) puffs twice per day, and Proventil two (2) puffs every four (4) hours as needed. (Tr. 480-82).

The evidence reveals that Plaintiff has been prescribed the steroid Orapred, however her use of Orapred did not average <u>more</u> <u>than</u> five (5) days per month for at least three (3) months during a twelve (12) month period, as required by Listing 103.03C. See 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 103.03C.

The ALJ also determined that Plaintiff's impairments do not functionally equal the listings and the ALJ evaluated Plaintiff's impairments pursuant to the six domains of functioning. (Tr. 69-79).

*1. Acquiring and Using Information*

The ALJ found that, in this domain, Plaintiff has no limitation of functioning. (Tr. 74-75). In the domain of acquiring and using information, the ALJ considers how well the child can acquire and learn information, and how well she can use the information she has learned. 20 C.F.R. § 416.926a(g). With respect to his finding that Plaintiff has no limitation in her ability to acquire and use information, the ALJ stated that the record does not show any limitation in this

13

area, and Plaintiff's mother did not report any difficulty in this area. (Tr. 75).

### 2. *Attending and Completing Tasks*

The ALJ found that Plaintiff has no limitation of functioning with respect to this domain. (Tr. 75-76). With respect to the area of attending and completing tasks, the ALJ considers how well the child is able to focus and maintain their attention, and how well they begin, carry through, and finish their activities, including the pace at which they perform activities and the ease with which they change them. 20 C.F.R. § 416.926a(h). In this area, the ALJ noted that the records do not reveal any problems in this area and Plaintiff's mother did not allege any such problems. (Tr. 76).

### 3. *Interacting and Relating with Others*

The ALJ found that Plaintiff has no limitation in interacting and relating with others. (Tr. 76-77). With respect to the domain of the ability to interact and relate with others, the ALJ will consider how well the child initiates and sustains emotional connections with others, develops and uses the language of their community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). In this domain, the ALJ noted that Plaintiff is described as comfortable, happy and playful at examinations, and her mother does not report any limitations in this area. (Tr. 77).

### 4. *Moving About and Manipulating Objects*

The ALJ found that Plaintiff has no limitation in this domain. (Tr. 77-78). In the domain of moving about and manipulating objects, the ALJ considers how the child is able to move her body from one place to another and how the child moves and manipulates objects. These are called gross and fine motor skills. 20 C.F.R. § 416.926a(j). In this area, the ALJ noted that the

records do not reveal any problems in this area and Plaintiff's mother did not allege any such problems. (Tr. 78).

### 5. Caring for Oneself

The ALJ found no limitation in Plaintiff's ability to care for herself. (Tr. 78-79). In the domain of caring for oneself, the ALJ considers how well the child maintains a healthy emotional and physical state, including how well she gets her physical and emotional wants and needs met in appropriate ways; how she copes with stress and changes in her environment; and whether she can take care of her own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The ALJ noted that Plaintiff is age appropriate in her self care activities and her mother has not indicated any significant limitation in this domain. (Tr. 79).

### 6. Health and Physical Well-Being

Finally, the ALJ found that Plaintiff has less than marked limitation in the health and physical well-being domain. (Tr. 79). The ALJ noted that Plaintiff was born prematurely, has developed asthma, which is on an appropriate maintenance therapy regimen with improved respiratory status. (Tr. 79). The ALJ also noted that her asthma is under good control except when she runs out of medication or contracts an upper respiratory infection from someone else. (Tr. 79). The ALJ stated that Plaintiff's condition affects her life, but it is not functionally or medically disabling. (Tr. 79).

The ALJ therefore found that Plaintiff does not have an impairment or combination or impairments that results in marked limitations in two domains of functioning, or an extreme limitation in one domain of functioning. (Tr. 79).

Review of the administrative record reveals that the decision of the ALJ finding that

Plaintiff does not meet, medically equal, or functionally equal the listings is supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner will be affirmed. An appropriate order follows.

Dated: December 12, 2013

_____
**United States District Judge**